# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                                    MASTER FILE NO. 12-md-02311

_____

In Re: Exhaust Systems                                  HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Direct Purchaser Plaintiffs                              2:16-cv-3701
                                                         2:16-cv-13968
_____/

## REDACTED OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Friedrich Boysen GmbH & Co. KG's Motion to

Dismiss (Doc. Nos. 27 (redacted) and 61 (sealed) in 16-3701).  Defendant asserts that

the Court lacks personal jurisdiction and that Direct Purchaser Plaintiffs ("DPPs") have

failed to state a claim for which relief can be granted.

The parties waived oral argument.  The Court has reviewed all relevant filings,

and for the reasons that follow, Defendant's motion is **GRANTED,** and Friedrich Boysen

GmbH & Co. KG is **DISMISSED**.

## I.  RELEVANT FACTS

Plaintiffs, Manny's Auto Supply, Inc. and Irving Levine Automotive Distributors,

Inc., filed their Complaint on behalf of a proposed class of direct purchasers of

Automotive Exhaust Systems on November 8, 2016, alleging antitrust violations.  Direct Purchaser Plaintiffs allege that they "purchased Automotive Exhaust Systems directly from one or more of the Defendants or their co-conspirators during the Class Period," (Doc. Nos. 1 (sealed) and 4 (redacted) in 16-13968, ¶¶ 11, 12, hereinafter Compl.).

According to DPPs, Defendants violated the antitrust laws by entering into a continuing conspiracy to rig bids and fix, raise, maintain, or stabilize prices of Automotive Exhaust Systems sold in the United States and elsewhere at supra-competitive levels.  "As a result of this unlawful conduct, Plaintiffs and other Class members paid artificially inflated prices for Automotive Exhaust Systems and have suffered antitrust injury to their business or property."  (See Compl. ¶¶ 1, 72, 91).

The Complaint defines Automotive Exhaust Systems" as one or more of the following:

> manifolds, flex pipes, catalytic converters, converters, diesel oxidation catalysts, diesel particulate filters, oxygen sensors, isolators, gaskets, clamps, resonator assemblies, pipe accessories, mufflers, muffler assemblies, and tubes. An exhaust system has a "hot end," which is the part of the exhaust system that is mounted to the engine (generally comprising the manifold and/or catalytic converter) and a "cold end," which is the part of the exhaust system that is mounted to the underbody of the car (and contains, for example, the muffler, pipes and/or the catalytic converter).

(Compl. ¶ 4).

Defendant Friedrich Boysen GmbH & Co. KG ("Boysen GmbH") is a company with its principal place of business in Germany.  (Compl. ¶ 23).  Boysen GmbH "directly or through its subsidiaries, which it wholly owned or controlled—or sold Automotive Exhaust Systems that were purchased in the United States, including in this District, during the Class Period."  (Id.)

## II. STANDARD OF REVIEW

Before its answer is filed, a defendant may move to dismiss for lack of personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists."  Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

If a district court rules on such a motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  The district court is granted considerable discretion in this decision and will be reversed only for abuse of discretion.  Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Mich. Nat'l Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989).  The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal.  Serras, 875 F.2d at 1214.  Where, as is the case here, the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facia* showing of jurisdiction in order to avoid dismissal, Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

3

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted."  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief.  First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007).  "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).  When reviewing a motion to dismiss,  the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

III.   **ANALYSIS**

A.  **Personal Jurisdiction**

The Supreme Court has held that to subject a nonresident defendant to personal jurisdiction, due process requires that he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)

4

(quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)).  The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exits.  <u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883, 887 (6th Cir. 2002).

A party is subject to the personal jurisdiction of the Court through either specific or general jurisdiction.  <u>See</u> <u>J Mcintyre Machinery, Ltd. v. Nicastro</u>, 567 U.S. 881-82 (2011).  Whether general or specific jurisdiction exists turns on the nature of the defendant's contacts with the forum.  <u>Bird v. Parsons</u>, 289 F.3d 865, 873 (6th Cir. 2002).

When "a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States, and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States."  <u>Med. Mut. v. deSoto</u>, 245 F.3d 561, 567-568 (6th Cir. 2001).  For federal antitrust claims, 15 U.S.C. § 22 authorizes service of process over an antitrust defendant "wherever it may be found."  Here, personal jurisdiction exists, provided Boysen GmbH has "sufficient minimum contacts with the United States" to satisfy the due process requirements of the Fifth Amendment.  <u>Med. Mut. of Ohio</u>, 245 F.3d at 566–67.  "This inquiry parallels the more traditional personal-jurisdiction analysis under which a defendant must have 'minimum contacts' " with the forum state pursuant to the state's long-arm statute.  <u>Carrier Corp. v.</u>

Outokumpu Oyj, 673 F.3d 430, 449-50 (6th Cir. 2012) (citing Med. Mut. of Ohio, 245 F.3d at 566–67).

### 1. General Jurisdiction

Boysen GmbH is organized under the laws of the Federal Republic of Germany. (Doc. No. 27 in 16-3701, Decl. of Rolf Geisel, President and CEO of Boysen GmbH, Ex. A ¶ 9).  All of Boysen GmbH's production facilities and offices are located in Germany, (id. ¶ 10), as are its directors, officers, and employees (id. ¶ 11).  Here, DPPs do not disagree that the Court may not exercise general jurisdiction over Boysen GmbH inasmuch as it is not "at home" in the United States.  See Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (citation omitted).  Accordingly, the Court considers whether it may exercise specific jurisdiction over Defendant.

### 2. Specific Jurisdiction

Specific jurisdiction subjects the defendant to actions in the forum arising out of or relating to the defendant's contacts with that forum.  Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984).  In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test set forth in S'ern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.   Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401 F.2d at 381).

### a.  Purposeful Availment

The first issue to be addressed relative to specific jurisdiction is whether Boysen

GmbH "purposefully avail[ed] [itself] of the privilege of acting in the forum or causing a

consequence in the forum."  Mohasco, 401 F.2d at 381.  "Purposeful availment" means

that the defendant's "contacts proximately result from the actions by defendant *himself*

that create a 'substantial connection' with the forum State."  Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original) (quoting McGee v. Int'l Life

Ins. Co., 355 U.S. 220, 223 (1957)).  This purposeful availment requirement "ensures

that a defendant will not be haled into a jurisdiction solely as the result of 'random,'

'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third

person.' "  Burger King at 475 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774

(1984); Helicopteros, 466 U.S. at 417).

According to the Complaint,

> Defendants and their co-conspirators supplied Automotive Exhaust
> Systems to OEMs for installation in motor vehicles manufactured and sold
> in the United States and elsewhere.  Defendants and their co-conspirators
> manufactured Automotive Exhaust Systems (a) in the United States for
> installation in motor vehicles manufactured and sold in the United States,
> (b) outside of the United States for export to the United States and
> installation in motor vehicles manufactured and sold in the United States,
> and (c) outside the United States for installation in motor vehicles
> manufactured outside the United States for export to and sale in the
> United States.

(Compl. ¶ 34).   In addition to this general allegation supporting jurisdiction, DPPs

advance several specific allegations involving meetings in which Boysen GmbH

participated:

███████████████████████████████████

███████████████████████████████████████



(Id. ¶ 46).

(Id. ¶ 48).

The allegations specific to Boysen GmbH stand in sharp contrast to those paragraphs in the complaint that allege that agreements were reached by other defendants during meetings.  (See e.g. Paragraphs 50, 51).



(Compl. ¶ 50).

(Compl. ¶ 51).

The Court must consider whether these allegations in conjunction with the other allegations in the Complaint establish Boysen GmbH itself created a substantial connection with the forum.  The Court finds they do not.

Direct Purchaser Plaintiffs first argue that the purposeful availment factor is met through the relationship of Boysen GmbH to its indirect subsidiaries, which operated

and manufactured products in the United States, from which Boysen GmbH received income.  As support for their position, DPPs direct the Court to the Boysen Group website, which states manufacturing and sales operations in the United States were a crucial component of the global strategy and a substantial source of income.  (Doc. No. 31, Exs. E and F).

Notably, DPPs do not argue that Boysen GmbH and its subsidiaries are alter-egos and for good reason.  There simply is no evidence offered that Boysen GmbH controlled its indirect subsidiaries, let alone exerted so much control over its indirect subsidiaries that the they do not exist as separate entities.  The Sixth Circuit has explained that a "non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 450–51 (6th Cir. 2012) (quoting Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008).  The unrebutted declaration offered by Boysen GmbH establishes that its subsidiaries exercise control over their day-to-day decisions, business affairs, budgets, personnel decisions, and operations.  (Doc. No. 27, Ex. A ¶¶ 51-55).

Here, the Court declines DPPs' invitation to disregard corporate law.  The alleged facts, even viewed collectively, do not state a prima facie case of jurisdiction.  Moreover, this Court has consistently granted a defendant's request for dismissal based on similar evidence.  See e.g. In re Auto. Parts Antitrust Litig., Nos. 2:12-cv-102, 2:12-cv-103, 2013 WL 2456610, * 8 (E.D. Mich. June 6, 2013) ("Wire Harness (Leoni

9

AG)") (rejecting alter-ego theory where there was "no evidence that the relationship between . . . [the parent and subsidiary] exceeded a typical corporate relationship).

Next, Direct Purchaser Plaintiffs assert that Boysen GmbH availed itself of the laws of the United States by placing its products in the stream of commerce with the intent to reach the United States.  The stream of commerce theory, articulated in Ashai Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987), does not support IPPs' assertion that the exercise of jurisdiction would satisfy due process given the facts of this case.

Direct Purchaser Plaintiffs allege that Boysen GmbH directly exported Automotive Exhaust Systems to its indirect subsidiary and third parties.  To support their theory, DPPs refer to the website TradeAtlas Importer Search Engine ("TradeAtlas"). (See Doc. No. 31, Ex. G, Printed version of page from TradeAtlas Importer Search Engine).  According to DPPs, TradeAtlas aggregates import and export data from "more than 6 million actual companies' data which is based on bills of lading, customs records and trade registers from 215 countries" (Doc. No. 31, p. 3).  DPPs contend that TradeAtlas shows that Boysen GmbH also sold Automotive Exhaust Systems to third-party entities in the U.S. (Id., Ex. H, "Sample of United States importer company records for exports from Boysen GmbH available and downloaded from TradeAtlas Importer Search Engine, https://www.tradeatlas.com/p7search/US/HS_CODE/870892/1293832800000/13569911 99000, visited on Oct. 24, 2017).  Finally, DPPs provide Exhibit I, a spreadsheet version of the report, with some unused fields concealed for simplicity, showing imports by Boysen USA LLC from Boysen GmbH, downloaded from Trade Atlas Importer Search

Engine at https://www.tradeatlas.com/p7firm/US/boysen-usa-llc/eyJhMSI6IkhTX0NPREUiLCJkMSI6Ijg3MDg5MiIsInMxIjoxM.

DPPs' reliance on these exhibits, which are unauthenticated hearsay, is misplaced. <u>See</u> Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); <u>Williams v. Case Mgmt., Inc.</u>, No. 12-2649-dkv, 2013 WL 12100722, at *5 (W.D. Tenn. June 17, 2013) (finding that the proponent could not rely on exhibits that were unauthenticated hearsay).  DPPs offer no foundation, no indicia of reliability, to support the admissibility of these documents.  Other courts have refused to considered "unauthenticated copies of documents and screenshots or printouts of Web sites."  <u>Fitzer v. Am Inst. of Baking</u>, No. CV209-169, 2016 WL 4223612 at *6 (S.D. Ga. Aug. 9, 2016).

Here, the Declaration of Rolf Geisel, President and Chief Execution Officer of Boysen GmbH, attests that Boysen GmbH sells vehicle exhaust systems and related components to vehicle manufacturers in Germany and other European countries.  (Doc. No. 27, Ex. A ¶ 25).  Moreover, Boysen GmbH is "contractually prohibited from selling into the aftermarket," and it does not do so.  (<u>Id.</u> ¶ 26).  It sells only to Original Equipment Manufacturers.  (<u>Id.</u>)  According to Geisel, Boysen GmbH does not manufacture vehicle exhaust systems and related components in locations outside the United States to sell to manufacturers located in the United States.  (<u>Id.</u> ¶ 27).  Nor does it "design, produce, or market" such products in the United States.  (<u>Id.</u> ¶ 31).

A "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not

enough that the defendant might have predicted that its goods will reach the forum State." J Mcintyre Machinery, Ltd. v. Nicastro, 564 U.S. 882 (2011) (Kennedy, J., plurality opinion).  The mere act of placing products into the stream of commerce, without more, is not a purposeful act directed at the forum.  Bridgeport Music, Inc. v. Still N The Water Pub, 327 F.3d 472, 479-80 (6th Cir. 2003).  This Court has repeated rejected this theory of purposeful availment based on similar facts.  See e.g. In re Automotive Parts Antitrust Litig., 2013 WL 2456611, at *4-5 (E.D. Mich. June 6, 2013) (rejecting stream of commerce argument because although the defendant sold wire harnesses to auto manufacturers whose goods reached the United States, there was no evidence that the defendant controlled the distribution decisions of its customers); In re Automotive Parts Antitrust Litig., 2014 WL 2999271, at *4 (E.D. Mich. July 3, 2014) (same).

Finally, there is no evidence that the test set forth in Calder v. Jones, 465 U.S. 783, 789 (1984) (courts could properly exercise personal jurisdiction over the defendants based upon the location wherein the burnt of the harm is felt) has been met. To support the application of the Calder test, DPPs argue that the brunt of the harm from the conspiracy was felt in the United States, and their allegations are sufficient to meet the Calder effects test.  The Court disagrees.  The Sixth Circuit has not given Calder wide berth.  The appeals court limits the application "by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises."  Scotts Co. v. Aventis S.A., 145 F. App'x. 109, 113 n. 1 (6th Cir. 2005) (citations omitted).   Boysen GmbH had no contacts with

the United States, and the United States cannot be deemed the focal point of its conduct.

### b. Connection and Reasonableness

Because IPPs cannot satisfy the first prong of the <u>Mohasco</u> test, there is no need to analyze the other factors:  whether Boysen GmbH's activities gave rise to Plaintiffs' causes of action, and whether it is reasonable to exercise personal jurisdiction over Boysen GmbH.  Each element of the test "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."  <u>Lak, Inc. v. Deer Creek Enter.</u>, 885 F.2d 1293, 1303 (6th Cir. 1989).

### B. Jurisdictional Discovery

Direct Purchaser Plaintiffs ask the Court to defer a decision on jurisdiction until full development of the record in the event the Court finds that the exercise of personal jurisdiction over Boysen GmbH is unwarranted.  In <u>Chrysler Corp. v. Fedders Corp.</u>, 643 F.2d 1229, 1240 (6th Cir.1981), the appellate court held that the decision to allow discovery prior to deciding a motion to dismiss for lack of jurisdiction is within the discretion of the district court.  Here, the Court finds there is no reasonable basis for expecting that further discovery would reveal contacts sufficient to support personal jurisdiction.

## IV.  CONCLUSION

For the reasons stated above, the motion is **GRANTED**.  Boysen GmbH is **DISMISSED** for lack of personal jurisdiction.

**IT IS SO ORDERED**.

13

Date:   September 28, 2018                    s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              United States District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 28, 2018.


                                              s/ Kay Doaks
                                              Case Manager

14